1

2

3

4

5

6

7

8                            UNITED STATES DISTRICT COURT

9                            EASTERN DISTRICT OF CALIFORNIA

10

11    VLASIA HANTAKAS,                          No.  2:14-cv-00235-TLN-KJN

12              Plaintiff,

13         v.
                                                **ORDER GRANTING IN PART AND**
14    METROPOLITAN LIFE INSURANCE                **DENYING IN PART PLAINTIFF'S**
                                                **MOTION FOR PARTIAL SUMMARY**
15    COMPANY,                                   **JUDGMENT; GRANTING DEFENDANT'S**
                                                **MOTION FOR REMAND**
16              Defendant.

17

18         This matter is before the Court pursuant to Plaintiff Vlasia Hantakas' ("Plaintiff") Motion

19    for Partial Summary Judgment.  (ECF No. 13.)  Defendant Metropolitan Life Insurance Company

20    ("Defendant" or "MetLife") opposes Plaintiff's motion.  (ECF No. 21.)  Defendant subsequently

21    filed a related Motion for Remand of Plaintiff's claim for long-term disability ("LTD") benefits

22    back to MetLife.  (ECF No. 17.)  Both parties have filed Oppositions (ECF Nos. 21 & 18) and

23    Replies to the Oppositions (ECF Nos. 22 & 23).  The Court has carefully considered the

24    arguments raised by both parties.  For the reasons set forth below, Plaintiff's Motion for

25    Summary Judgment is GRANTED in part and DENIED in part.  Defendant's Motion for Remand

26    is GRANTED with the stipulations set forth below.

27    //

28    //

                                                  1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.   FACTUAL & PROCEDURAL HISTORY

Plaintiff brought this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et. seq.  As part of her employment, Plaintiff was a participant in the Kaiser Permanente Flexible Benefits Plan ("the Plan"), an "employee welfare benefit plan" under 29 U.S.C. § 1002(1).  (Compl., ECF No. 2 at ¶¶ 4–8.)  MetLife issued the insurance policy funding the benefits, Group Policy Number 95910-1-G,[1] and served as the Plan administrator for all LTD claims.  (ECF No. 17-2 at 10, 63–64.)

Plaintiff became an employee of Kaiser Permanente on or about April 3, 2006.  (ECF No. 2 at ¶ 9.)  Plaintiff last worked as Assistant Director of Imaging in the Radiology Department of Kaiser Permanente Hayward, until May 26, 2010.  (Mem. P. & A. Supp. Mot. for Summ. J., ECF No. 14 at 6.)  As of May 27, 2010, Plaintiff was unable to perform the material duties of her job and submitted a claim with MetLife for LTD benefits on October 21, 2010.  (Administrative R. ("AR") 902.)[2]  Plaintiff stated in her initial claim forms that she could not perform her job duties due to severe pain and sciatica when sitting, standing or lying in the same position.  (AR 815.)  She also claimed to have right knee and shoulder pain.  (AR 815.)  After a review of Plaintiff's medical records, MetLife approved Plaintiff's claim for LTD benefits on March 29, 2011.  (AR 660–662.)  Benefits of $3,755.27 were payable as of November 23, 2010 (following the 180 day "waiting period" required by the Plan from the date of eligibility of May 27, 2010).  (AR 660–662.)

In their March 29, 2011, benefits approval letter, MetLife also advised Plaintiff of the Plan's two different disability definitions, noting that:

---

[1] Two sets of "Plan" documents were submitted to the Court.  The 2004 Plan document was originally submitted as part of the Administrative Record filed under seal.  (ECF No. 12-5 at 113–155.)  Subsequently the 2010 Plan document was filed by Defendant as Exhibit B to their Motion for Remand.  (ECF No. 17-2 at 7–66.)  According to MetLife's Declaration by Litigation Specialist Cindy Broadwater, "The 2010 Plan document is the applicable Plan document for Plaintiff's claim based on the claimant's date of disability and is the Plan document that was used in the administration of Plaintiff's claim."  (ECF No. 17-2 at 2–3.)  As the Plaintiff did not dispute the new 2010 Plan document in her reply brief, the Court has used the 2010 Plan document for applicable definitions and all references to the Plan refer to the 2010 Plan document.

[2] Defendants lodged the administrative record under seal on October 6, 2014, document bates labeled MET-HAN 001 through MET-HAN 1370.  Since the parties use the administrative record page numbers in their briefing, the Court has maintained this reference rather than the corresponding ECF page number.

> Disabled or disability means that, due to sickness, pregnancy or accidental injury you are receiving Appropriate Care and Treatment from a Doctor on a continuing basis; and
>
> 1. during your Elimination period and the next 24 month period, you are unable to earn more than 80% of your Predisability Earning or Indexed Predisability Earnings at your Own Occupation for any employer in your Local Economy; or
>
> 2. after the 24 month period, you are unable to earn more than 80% of your Indexed Predisability Earnings from any employer in your Local Economy at any gainful occupation for which you are reasonably qualified taking into account your training, education, experience and Predisability Earnings.

(AR 660.)  MetLife further noted that benefits would continue only as long as Plaintiff continued to meet the definitions of "disabled," that in any case benefits under the Plaintiff's 24-month "own occupation" period would end on November 22, 2012, and that in order for benefits to continue on or beyond November 23, 2012, (i.e., upon expiration of the 24-month "own occupation" period) she must be disabled from performing "any occupation" as defined by the Plan.  (AR 660–662.)  The letter also informed Plaintiff that she was required to apply for Social Security disability benefits if she expected her disability to continue for at least one year, and that any recovery would offset her MetLife LTD award.  (AR 662.)

Plaintiff timely applied for Social Security disability benefits and was awarded benefits in a letter dated September 4, 2011.  (AR 499–505).  On September 18, 2011, after the favorable Social Security Disability Award, MetLife sent Plaintiff a letter to recover the overpayment of benefits due to the required offset.  (AR 495–496).  Plaintiff sent MetLife a check for the benefit overpayment in the requested amount of $10,652.83.  (AR 489.)

Plaintiff continued to receive LTD benefits from MetLife up to and including November, 13, 2012, nine days short of the full 24-month "own occupation" period.  (AR 223–227.)  On October 1, 2012, Dr. Veena Vani, MetLife Medical Director, conducted a Physician File Review of Plaintiff's file and determined that Plaintiff had "no objective exam findings to show ongoing impairment to preclude from sedentary work."  (AR 246–247.)  MetLife sent the Medical Director's finding and report to Plaintiff's treating physician, Dr. Larry Marianella for response.  (AR 242.)  On October 19, 2012, Dr. Marianella replied to MetLife stating that he disagreed with

their conclusions and Plaintiff remained disabled and unable to work.  (AR 236.)  Nevertheless, on November 13, 2012 MetLife sent Plaintiff a letter informing her that the her claim for LTD benefits were terminated as of November 13, 2012 because the MetLife Medical Director's review concluded that she was "able to perform your sedentary Usual and Customary occupation of an Assistant Facilities Director."  (AR 223–227.)

On April 9, 2013, Plaintiff's attorney submitted a "formal appeal" letter to MetLife, challenging the benefits denial.  (AR 116.)  On April 15, 2013, MetLife acknowledged receipt of Plaintiff's timely appeal and informed Plaintiff that they would evaluate the documentation and advise her of their determination within 45 days, but under special circumstances could require up to an additional 45 days and would notify her in writing if this was necessary.  (AR 115.)  On May 14, 2013, MetLife informed Plaintiff her file was under review but they would require an additional 45 days to render a decision on the appeal.  (AR 98.)  On July 18, 2013, Plaintiff's attorney sent a faxed request to MetLife for a status update.  (AR 97.)  On July 23, 2013, MetLife informed Plaintiff that her "entire file [had] been referred to an independent physician consultant for review" and she would be notified when they received the report.   (AR 96.)  On July 26, 2013, Plaintiff acknowledged receipt of MetLife's July 23, 2013 letter and again requested "a definitive response as to when MetLife [would] make a decision on the case."  (AR 82–84.)

On September 9, 2013, MetLife informed Plaintiff that their review was ongoing and that they had submitted the results of the Independent Physician Consultant's review to several of Plaintiff's physicians.  (AR 68.)  Included in this communication was a copy of the May 2, 2013 Independent Peer Review from Robert Lee Waltrip, M.D. (AR 69–78), along with Dr. Waltrip's July 23, 2013 addendum supporting the original recommendation.  (AR 79–81).  MetLife informed Plaintiff that a response from Plaintiff's physician was required within 14 days.  (AR 68.)  On September 20, 2013, Plaintiff replied to MetLife's request, including letters from two of Plaintiff's physicians stating that Plaintiff could not return to work.  (AR 36–48.)

On October 17, 2013, MetLife informed Plaintiff that a signed authorization form was needed by one of Plaintiff's physicians, Dr. Nazeri, in order to respond to MetLife's request.  (AR

17.)  Plaintiff's attorney sent further inquiries to MetLife for a status update/claim decision on October 18, 2013 (AR 7–15), November 13, 2013 (AR 5–6), and November 25, 2013 (AR 3-4). On December 9, 2013, Plaintiff's attorney informed MetLife that if no benefit determination was received before December 31, 2013 Plaintiff would proceed with a federal lawsuit for benefits. (AR 1–2.)  The Administrative Record (filed under Seal) and filings suggest there was no further communication between MetLife and the Plaintiff, or her attorney, until after this lawsuit was filed on January 27, 2014.[3]

On January 27, 2014, Plaintiff filed the instant Complaint pleading three causes of action: (1) benefits under 29 U.S.C section 1132(a)(1)(B); (2) equitable relief under 29 U.S.C. 1132(a)(3); and (3) declaratory relief.  (ECF No. 2 at 6–7.)  Plaintiff seeks the following relief: (1) judgment awarding Plaintiff past benefits owed; (2) judgment reinstating Plaintiff's long term disability benefits; (3) attorney's fees pursuant to 29 U.S.C. 1132(g); (4) prejudgment interest pursuant to 29 U.S.C. 1132(a)(1)(B); (5) cost of suit; (6) an accounting and establishment of a constructive trust to include disgorgement of profits made by Defendant; (7) judicial determination of the rights and duties of Plaintiff and defendant with regard to the contract of insurance issued by MetLife to Kaiser Foundation Health plan, as well as a determination of the past, present and future benefits to which Plaintiff is entitled; and (8) for such other and further relief as the Court may deem just and proper.  (ECF No. 2 at 8–9.)

As required by the Court's Pretrial Scheduling Order (ECF No. 9), MetLife submitted the Administrative Record on October 1, 2014.  (ECF No. 12.)  On October 2, 2014, Defendants counsel, Jenny H. Yang, called Plaintiff's counsel, Daniel Glass, and orally communicated MetLife's willingness to pay Plaintiff benefits for the remaining 9 days of the 24-month "usual occupation" period, along with reasonable attorney's fees that the Plaintiff incurred in this litigation up to that point in time.  (Supplemental Decl. of Jenny H. Wang in Supp. Def.'s Mot. Remand, ECF No. 23-1 at ¶ 2.)

On October 9, 2014, Plaintiff submitted the instant Motion for Partial Summary

---

[3] Since the Court reached its decision on other grounds, the Court has not closely examined, provided a factual review of, or reached conclusions about the Plaintiff's medical conditions as supported by the administrative record.

Judgment.  (ECF No. 13.)  On October 20, 2014 MetLife filed a Motion for Remand (ECF No.

17) and also informed Plaintiff and her attorney via letter that they had completed the appeal

review of Plaintiff's termination of LTD benefits.  (ECF No. 17-2 at 5.)  Based on that review,

MetLife reversed their termination decision and approved LTD benefits through November 22,

2012, finding that "Ms. Hantakas continued to have restrictions and limitations that rendered her

unable to perform her Usual Occupation as an Assistant Facilities Director of Imaging Services

through November 22, 2012."  (ECF No. 17-2 at 5–6.)  MetLife sent Plaintiff a check for 9 days

of unemployment (11/14/2012 to 11/22/2012) in the amount of $1812.08.  (Decl. of Daniel S.

Glass in Opp. MetLife's Mot. Remand, ECF No. 19 at 16.)  MetLife also agreed to pay Plaintiff's

attorney $13,500 in fees.  (ECF No. 19 at 3.)  MetLife further informed Plaintiff that they would

still need to make a determination about Plaintiff's eligibility for benefits under the "'any

occupation' definition of Total Disability under the Plan" and that they would be in touch to

schedule an "independent medical examination" to assist with that decision.  (ECF 17-2 at 5–6.)

On November 6, 2014, Plaintiff filed an Opposition to Defendant's Motion to Remand

(ECF No. 18), and Defendant filed an Opposition to Plaintiff's Motion for Summary Judgment

(ECF No. 21).  Replies by both parties were filed on November 13, 2014.  (ECF Nos. 22 & 23.)

## II.   STANDARD OF LAW

Summary judgment is appropriate when the moving party demonstrates no genuine issue

as to any material fact exists, and therefore, the moving party is entitled to judgment as a matter

of law.  Fed. R. Civ. P. 56 (c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Under

summary judgment practice, the moving party always bears the initial responsibility of informing

the district court of the basis of its motion, and identifying those portions of "the pleadings,

depositions, answers to interrogatories, and admissions on file together with affidavits, if any,"

which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v.

Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof

at trial on a dispositive issue, a summary judgment motion may properly be made in reliance

solely on the pleadings, depositions, answers to interrogatories, and admissions on file."  *Id.* at

324 (internal quotations omitted).  Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Id.* at 251–52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank*, 391 U.S. at 288–89.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits.  Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982).  The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party.  *Anderson*, 477 U.S. at 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

7

obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).  Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587.

## III.    ANALYSIS[4]

Plaintiff requests awards to date.[5]  (ECF No. 14 at 24 ("Plaintiff requests . . . she be awarded 24.3 months of disability benefits . . ."); ECF No. 22 at 11 ("Plaintiff respectfully requests . . . that she be awarded benefits from November 23, 2012 to the present, and that her monthly benefits continue through any further investigation MetLife now wants to undertake to decide if Ms. Hantakas remains disabled from 'any occupation.'").)  According to the applicable MetLife Plan documents, an insured is considered totally disabled if:

> During the Elimination Period and the next 24 months, You are unable to perform with reasonable continuity the Substantial and Material Acts necessary to pursue Your Usual Occupation in the usual and customary way.
>
> After such period, You are not able to engage with reasonable continuity in any occupation in which You could reasonably be expected to perform satisfactorily in light of Your:
> - age;
> - education;
> - training;
> - experience;
> - station in life; and
> - physical and mental capacity

---

[4] Plaintiff argues for a de novo standard of review under ERISA.  (ECF No. 14 at 16–17.)  Defendant argues that any need for review is now moot and therefore requests remand and does not address the standard of review in their Opposition or Motion for Remand.  (ECF No. 17.)  The Court has decided the instant motion on other grounds and thus does not address the appropriate ERISA standard of review or the applicability of California Insurance Code section 10110.6 at this time.

[5] Plaintiff's motion is labeled as "Partial Summary Judgment," however, the Plaintiff is unclear in the briefing as to which causes of action are excluded from the summary judgment request.  Accordingly, after careful review of the motion, the Court construes Plaintiff's "Motion for Partial Summary Judgment" as a motion for complete summary judgment as to all causes of action plead.  The Complaint brings three causes of action: (1) benefits under 29 U.S.C section 1132(a)(1)(B); (2) equitable relief under 29 U.S.C. 1132(a)(3); and (3) declaratory relief.  For the purposes of this motion the underlying legal analysis is the same for all three counts and therefore the Court will address all counts simultaneously.

that exists within any of the following locations:
- a reasonable distance or travel time from Your residence in light of the commuting practices of Your community;
- a distance of travel time equivalent to the distance or travel time You traveled to work before becoming disabled; or
- the regional labor market, if You reside or resided prior to becoming disabled in a metropolitan area.

Elimination Period means the period of Your Disability during which We do not pay benefits. The Elimination Period begins on the day You become Disabled and continues for the period shown in the SCHEDULE OF BENEFITS [180 days].

(ECF No. 17-2 at 28, 31.)

Accordingly, pursuant to the Plan provisions, in order to qualify as "disabled" during the first 24 months following the elimination period, Plaintiff must be unable to perform the substantial and material acts necessary to pursue her usual occupation.  (ECF No. 21 at 8.)  That is typically referred to as the "own occupation" period.  (ECF No. 21 at 8.)  After that, Plaintiff qualifies as "disabled" as defined by the Plan only if she is unable to engage in any occupation she could be reasonably expected to perform satisfactorily taking into account her age, education, training, experience, station in life and physical and mental capacity.  (ECF No. 21 at 8.)  That is typically called the "any occupation" period.  (ECF No. 21 at 8.)  Awarding benefits up to the present date would require the Court to find that Plaintiff's benefits were wrongly terminated under the "own occupation" definition of disability, and also a finding that Plaintiff qualifies for benefits under the "any occupation" definition of disability.

### A.  "Own (usual) occupation" period

Plaintiff received benefits under the Plan's "own occupation" definition of disability from November 23, 2010, (following the 180 day "elimination period" required by the Plan from the May 27, 2010 date of eligibility) (AR 660–662) until November 13, 2012, nine days short of the full 24-month "own occupation" period.  (AR 223–227.)  As of November 13, 2012, Plaintiff was denied continued benefits on the basis of an October 1, 2012 Physician File Review by MetLife Medical Director Dr. Vani that concluded Plaintiff had "no objective exam findings to show ongoing impairment to preclude from sedentary work."  (AR 223–227, 246–247.)  Plaintiff timely appealed the denial on April 9, 2013.  (AR 116.)  Despite MetLife's promise to make a

determination within a maximum time period of 90 days (AR 115), a decision on the appeal was not reached until October 20, 2014, approximately 15 months past the allotted review time, and only after Plaintiff filed this lawsuit.  (ECF No. 17-2 at 5–6.)

Despite the unreasonable delay, MetLife has recently decided that "the claim file supports that Ms. Hantakas continued to have restrictions and limitations that rendered her unable to perform her Usual Occupation as an Assistant Facilities Director of Imaging Services through November 22, 2012."  (ECF No. 17-2 at 5–6.)  Given MetLife's October 20, 2014, decision to reverse termination of Plaintiff's LTD benefits for the remainder of her "own occupation" period, there are no material facts in question as to Plaintiff's eligibility for benefits for the remainder of the "own occupation" period.  Therefore, the Court hereby GRANTS Plaintiff's Motion for Partial Summary Judgment as to LTD benefits for the remainder of Plaintiff's "own occupation" period (November 14, 2012 through November 22, 2012).

### B.  "Any occupation" period

Plaintiff also requests the Court award her benefits on the basis of the "any occupation" definition under the Plan.  (ECF No. 14 at 24; ECF No. 22 at 11.)  MetLife argues they have not yet made a determination about Plaintiff's eligibility for benefits under the "any occupation" definition and requests that the Court remand the action back to MetLife to determine whether Plaintiff is disabled under the more expansive definition of "any occupation."  (ECF No. 17.) Plaintiff argues that remand is not appropriate as this Court can decide Plaintiff's eligibility for benefits based on the administrative record.  (ECF No. 18.)

Clearly established Ninth Circuit precedent holds that determinations of entitlement to ERISA-governed benefits are to be made in the first instance by the claim administrator, not by a court sitting in review thereof.  *Taft v. Equitable Life Assurance Soc'y of the U.S.*, 9 F.3d 1469, 1472 (9th Cir. 1993).  In *Taft*, the Ninth Circuit noted that if district courts were to conduct an expanded review of administrative decisions by examining evidence outside the administrative record, it

> would impede an important purpose of the federal statute under which district courts have jurisdiction to review these

administrative decisions: A primary goal of ERISA was to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously. Permitting or requiring district courts to consider evidence from both parties that was not presented to the plan administrator would seriously impair the achievement of that goal. Nothing in the legislative history suggests that Congress intended that federal district courts would function as substitute plan administrators, a role they would inevitably assume if they received and considered evidence not presented to administrators concerning an employee's entitlement to benefits. Such a procedure would frustrate the goal of prompt resolution of claims by the fiduciary under the ERISA scheme.

*Id*. (quoting *Sandoval v. Aetna Life & Casualty Ins. Co.*, 967 F.2d 377, 380 (10th Cir.1992) (quoting *Perry v. Simplicity Eng'g*, 900 F.2d 963, 967 (6th Cir.1990)).

In *Saffle*, the Ninth Circuit found remand appropriate where "the district court erred by ordering benefit payments beyond the initial 24–month disability period because Saffle never applied for general disability payments and her eligibility for the second-tier benefits has never been considered by the Benefit Committee." *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 460 (9th Cir. 1996). The Court noted that:

there is nothing in the administrative record about general disability. Of course it is the case, as Saffle contends, that she could not have applied for general disability since she first must have been awarded occupational disability benefits; but that affords no basis upon which to uphold an order to pay benefits from the date of onset to the present. Therefore, to the extent the district court ordered payments beyond the initial 24–month disability period, it was error to do so.

*Id*. The Court concluded that:

[u]nlike other instances where an ERISA plan administrator abuses its discretion (for example, rendering a decision without explanation, or relying on clearly erroneous findings of fact, *Taft*, 9 F.3d at 1472), the Sierra Pacific Benefit Committee has not yet had the opportunity of applying the Plan, properly construed, to Saffle's application for benefits. It should be up to the administrator, not the courts, to make that call in the first instance.

*Id*.

After careful review of the entire administrative record, the Court agrees with MetLife that no decision has been reached about Plaintiff's eligibility for benefits under the "any occupation" definition. All communications with Plaintiff have been about her eligibility for benefits during the initial 24 month "own occupation" period. Similar to *Saffle*, because her

11

benefits were denied short of the full "own occupation" period, Plaintiff never applied for and MetLife never considered Plaintiff's eligibility under the more stringent "any occupation" standard for extended benefits.  Accordingly, the Court finds that remand is appropriate in order for MetLife to make a determination as to Plaintiff's eligibility under the "any occupation" standard.  It is the Court's job to review the administrator's decision, not make the determination in the administrator's stead.  Until MetLife has rendered a decision regarding Plaintiff's eligibility for benefits under the "any occupation" standard, there is nothing for this Court to review.

Plaintiff proffers several different arguments to counter this conclusion.  First, Plaintiff's comparison to the facts in *Lavino v. Metro. Life Ins. Co.*, 779 F.Supp.2d 1095 (C.D. Cal. 2011) ("*Lavino II*") are unavailing.  While the Plaintiff is correct that the ultimate outcome in *Lavino II* was an award of benefits to the Plaintiff under the "any occupation" standard, the Court initially remanded the determination of Lavino's eligibility for benefits under the "any occupation" standard back to MetLife.  *Lavino v. Metro. Life Ins. Co.*, 2010 U.S. Dist. LEXIS 2510, *38 (C.D. Cal. Jan. 13, 2010) ("*Lavino I*") (Because MetLife improperly terminated Plaintiffs' benefits, reinstatement of the terminated benefits is appropriate. However, because MetLife has never had an opportunity to decide Plaintiff's case under the "any occupation" standard, Plaintiff's request for "any occupation" benefits is not an appropriate subject of this action. This Court is not the proper forum to submit an "any occupation" claim in the first instance. Remand is proper with respect to the any-occupation standard.  *See Saffle*, 85 F. 3d at 461; *accord Pakovich v. Broadspire Services, Inc.*, 535 F.3d 601, 605, 607 (7th Cir. 2008)).  At this stage, the facts here are similar to the facts in *Lavino I* and remand is appropriate as to the "any occupation" standard.  Plaintiff's reliance on the ultimate decision in *Lavino II* is misplaced.

Second, Plaintiff argues that "[Plaintiff's] inability to perform her own 'sedentary' occupation is exactly the same as being unable to perform 'any occupation.'"  (ECF No. 14 at 10.)  More specifically, Plaintiff contends "there is absolutely no distinction to be made between the 'any occupation' definition of disability which attaches to a 'sedentary' occupation in the general economy and the purported 'sedentary' occupation [Plaintiff] last worked at in May,

2010." (ECF No. 18 at 5–6; ECF No. 14 at 10–11.) The basis of Plaintiff's contention is that the physical exertion category[6] attached to her "own occupation" (ie., her last job) was "sedentary" and "no jobs in the national economy are recognized to require less physical exertion than 'sedentary.'" (ECF No. 14 at 10.) Therefore, Plaintiff contends that MetLife must reach the conclusion that Plaintiff is unable to perform "any occupation" since the same sedentary rating applies to this determination as it did to the "own occupation" standard.

Plaintiff has provided no case law to support the argument that a beneficiary's sedentary job rating renders both LTD benefit standards equivalent. The plain language of the Plan as noted in III.A, *supra*, makes it clear that there are two different standards of disability. MetLife was also clear in their communications with Plaintiff that she would be required to meet a different definition of disability after 24 months. (AR 660–662.) Whether the sedentary rating of Plaintiff's jobs renders the "own occupation" and "any occupation" standards equivalent is one for the claim administrator, MetLife, to determine in the first instance. It is possible there is a sedentary job that Plaintiff could perform meeting the more expansive "any occupation" definition. That is a fact specific inquiry to be conducted by the claim administrator based on the extent of Plaintiff's disability and the factors outlined in the plan, including: age; education; training; experience; station in life; physical and mental capacity; and location of her residence with respect to the distance or travel time to available work. As no decision about the equivalency of the ratings has been made by MetLife, there is no determination for the Court to review at this time.

Third, Plaintiff asserts that MetLife's November 13, 2012, denial letter (AR 228-232) "muddied the waters" as to what benefits were being denied by using improper terms. (ECF No. 18 at 6.) The denial letter states that benefits were being terminated "because you are able to perform your sedentary Usual and Customary occupation of an Assistant Facilities Director." (AR 228.) Plaintiff contends that "MetLife's policy never uses the term "your sedentary usual

---

[6] 20 C.F.R. section 404.1567 provides definitions for the physical exertion requirements of work in the national economy, used by the Social Security Administration to evaluate claims for Social Security Disability. Jobs are classified as sedentary, light, medium, heavy, and very heavy.

and customary occupation." (ECF No. 18 at 6.)  Rather, the Plan refers only to "'Your Usual Occupation' or 'any occupation.'" (ECF No. 18 at 6.)  Plaintiff argues that the use of the term "sedentary job" was confusing and led Plaintiff to believe the denial was related to the "any occupation" benefit.  Plaintiff further argues that the discussion in the denial letter of available benefits after 24 months would have no relevance if benefits were only being denied for the "own occupation" period. (ECF No. 18 at 6.)  The Court disagrees.  The Plaintiff is essentially contending that the additions of the words "sedentary" and "customary occupation" were added to cause purposeful confusion.  The Plan language defines "Totally Disabled" or Total Disability" as: "During the Elimination Period and the next 24 months, You are unable to perform with reasonable continuity the Substantial and Material Acts necessary to pursue Your Usual Occupation in the usual and customary way." (ECF No. 17-2 at 31.)  The word "customary" is clearly part of this definition.  The only word not in this definition is "sedentary" and it quite obviously refers to the Plaintiff's own job which was determined to be sedentary when her claim was approved. (AR 660–662.)  Further, MetLife was clear in all their communication with Plaintiff that two levels of benefits existed.  It seems obvious that denial of benefits during the first level of benefits would relate to benefits only during that period.  The reference to the two levels of benefits in the November 13, 2012, denial letter seems to clarify rather than confuse and is consistent with all the other communications Plaintiff received from MetLife.  The Plaintiff does not make a compelling argument that MetLife intentionally attempted to confuse Plaintiff into believing her "any occupation" benefits were being denied.

Fourth, Plaintiff alleges that MetLife has not processed her appeal of the denial of LTD benefits in a timely fashion, resulting in a de facto denial of benefits.  The crux of Plaintiff's argument here seems to be that "MetLife flagrantly and repeatedly violated its policy and ERISA's Claims procedures found at 29 CFR 2560.503-1." (ECF No. 18 at 8.)

29 C.F.R. § 2560.503-1(f)(3) provides:

> In the case of a claim for disability benefits, the plan administrator shall notify the claimant, in accordance with paragraph (g) of this section, of the plan's adverse benefit determination within a reasonable period of time, but not later than 45 days after receipt of

14

1    the claim by the plan.

2    The regulation provides that this period may be extended for up to two 30-day periods, but only if

3        the plan administrator both determines that such an extension is
         necessary due to matters beyond the control of the plan and notifies
4        the claimant, prior to the expiration of the initial 45-day period, of
         the circumstances requiring the extension of time and the date by
5        which the plan expects to render a decision.

6    29 C.F.R. § 2560.503-1(f)(3). The regulation clarifies that:

7        [the time period] within which a benefit determination is required to
         be made shall begin at the time a claim is filed in accordance with
8        the reasonable procedures of a plan, without regard to whether all
         the information necessary to make a benefit determination
9        accompanies the filing.

10   29 C.F.R. § 2560.503-1(f)(4).  If a plan fails to follow these claims procedures,

11       a claimant shall be deemed to have exhausted the administrative
         remedies available under the plan and shall be entitled to pursue
12       any available remedies under section 502(a) of the Act on the basis
         that the plan has failed to provide a reasonable claims procedure
13       that would yield a decision on the merits of the claim.

14   29 C.F.R. § 2560.503-1(l).  The Court agrees that MetLife failed to follow appropriate claim

15   procedures as to Plaintiff's appeal of the denial of her "own occupation" benefits.  However,

16   failure to follow ERISA claim procedures for the initial appeal does not impute to MetLife's

17   decision under the "any occupation" standard.  Plaintiff's reference to *Kroll v. Kaiser Found.*

18   *Health Plan Long Term Disability Plan*, 2012 U.S. Dist. LEXIS 25063 (N.D. Cal. Feb. 10, 2012)

19   is unavailing.  As the Plaintiff correctly points out, in *Kroll* "[a]fter a lawsuit and summary

20   judgment, benefits were awarded by the court [for the own occupation period] and [the case was]

21   remanded for an 'any occupation' determination."  (ECF No. 18 at 10.)  Similar to *Kroll*, remand

22   is appropriate here for a determination of benefit eligibility under the "any occupation" standard,

23   despite the improper handling of the benefits termination under the "own occupation" standard.

24   While the Plaintiff is correct that eventually the *Kroll* court found the defendant had failed to

25   comply with ERISA's claim procedures with respect to the "any occupation" standard, that

26   decision was reached after the initial remand.  Upon remand, the defendant in Kroll did nothing to

27   evaluate the plaintiff's "any occupation" claim for four months, and then requested a medical

28   exam which the plaintiff's opposed.  *Kroll*, 2012 U.S. Dist. LEXIS 25063 at *6.  That is not the

stage we are currently in.  As in *Kroll*, MetLife should be given an opportunity to determine Plaintiff's eligibility for benefits under the "any occupation" standard, following the ERISA claim procedures.  Should MetLife fail to do so, then the Plaintiff can file another motion with the Court.

Fifth, Plaintiff argues that because the Social Security Administration ("SSA") approved her claim for benefits under the Social Security Act, MetLife must *ipso facto* approve her claim for benefits under the Plan's "any occupation" definition of disability.  Plaintiff is incorrect.  The Ninth Circuit has long held that the SSA's approval of benefits under the Social Security Act is not binding on a plan administrator in an ERISA case.  *Madden v. ITT Long Term Disability Plan for Salaried Employees*, 914 F.2d 1279, 1286 (9th Cir. 1990), cert. denied, 498 U.S. 1087 (1991).

> Moreover, if Madden's argument [that he is eligible for ERISA-governed disability benefits because he received a social security disability award] were correct, ERISA fiduciaries would be stripped of all administrative discretion, as they would be required to follow the Department of Health and Human Services' decisions regarding social security benefits, even where the Plan determines benefits under different standards or the medical evidence presented is to the contrary.

*Id*.  The standards for determining disability as defined by the SSA are different from those applicable to ERISA-governed LTD plans.  Specifically, the SSA must afford great weight to a claimant's treating physicians, whereas ERISA claim administrators are not required to defer to treating physicians.  *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832–34 (2003).  The SSA's finding of disability can conflict with an ERISA claim administrator's decision to deny a claim based upon the same condition because the "treating physician rule" does not apply to the ERISA-governed claim, whereas it does apply to the claim for benefits under the SSA.  *Chadwick v. Metropolitan Life Ins. Co.*, 2007 U.S. Dist. LEXIS 53688 (E.D. Cal. July 25, 2007).  Accordingly, Plaintiff's argument is unavailing since the favorable SSA award received by Plaintiff does not by law require MetLife to reach a favorable decision regarding Plaintiff's eligibility for LTD benefits under the "any occupation" standard.

Finally, Plaintiff asserts that denial of her claim just short of the end of her "own occupation" period is a "stunt" that has allowed MetLife a "two year stall" in making a claim

decision.  (ECF No. 18 at 2–3.)  Plaintiff cites several cases to suggest that "MetLife appears to be the 'poster child' for 'parsimonious claims handling.'"  (ECF No. 18 at 8.)  According to Plaintiff, the improper denial of benefits in this case is "business as usual" for MetLife and this "requires the court to give very little credence to MetLife's determination."  (ECF No. 14 at 17.)  The Court reminds Plaintiff that MetLife's prior actions are not the subject of this case.  As this is not a class action lawsuit, the Court considers only MetLife's actions with respect to this Plaintiff in rendering a decision about whether MetLife's benefit determination is proper.  However, the Court agrees that MetLife's conduct in this matter reeks of gamesmanship.  The Court is unimpressed with MetLife's admittedly wrongful termination of Plaintiff's benefits under the "own occupation" period, the unreasonable delay in processing Plaintiff's appeal, and the handling of Plaintiff's current claim for benefits under the "any occupation" standard.  MetLife has blatantly failed to follow its own claim procedures and those required under ERISA.  While MetLife argues it has not acted in bad faith, it has certainly mishandled Plaintiff's claim.  However, because the claim administrator has not had the opportunity to consider whether Plaintiff is disabled under its definition for "any occupation," the Court agrees that remand is appropriate despite MetLife's conduct.  *See*, *Sullivan v. Prudential Ins. Co. of Am.*, No. 2:12-CV-01173-TLN-DA, 2014 WL 3529974 at *36 (E.D. Cal. July 15, 2014).

Nevertheless, the Court is sensitive to Plaintiff's worry about further delays in claim processing.  Therefore, MetLife must file a realistic and expedient timeline for their decision of Plaintiff's LTD claim under the "any occupation" standard.  While MetLife is correct that Plaintiff's motion for summary judgement could be rendered moot by their benefit determination regarding Plaintiff's "any occupation" eligibility, the Court will stay this case pending that decision in order to prevent any further prejudice to the Plaintiff.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment is GRANTED in part and DENIED in part.  The Court orders as follows:

1.  Plaintiff's Motion for Partial Summary Judgement is GRANTED for the "own

occupation" period up to and including November 22, 2012.

2. Plaintiff's Motion for Partial Summary Judgment is DENIED for the "any occupation" period, beginning November 23, 2012 to date.

Defendant's Motion for Remand is GRANTED with the following stipulation:

1. Within fourteen days of this Order Defendant must file a realistic and expedient timeline for their decision of Plaintiff's LTD claim under the "any occupation" standard.

This case is stayed pending decision of Plaintiff's claim under the "any occupation" standard.

Dated: January 29, 2016

Troy L. Nunley
United States District Judge

18